UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:09CV70-J

LESTER QUINLIN                                                               PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before the Court is claimant Lester Quinlin's Complaint seeking judicial review of the unfavorable decision rendered by the defendant Commissioner denying his claims for Disability Insurance ("DIB") and Supplemental Security Income Benefits ("SSI"). After examining the administrative record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision is supported by substantial evidence and should be upheld.

PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI benefits on July 5, 2006 alleging that he became disabled as of January 1, 2006 as a result of chronic obstructive pulmonary disease and a degenerative spine (Tr. 146). Claimant's previous work includes construction worker, machine operator, factory painter, factory assembly worker and hardware order filler. Following a hearing at which both the claimant and a vocational expert offered testimony, Administrative Law Judge Roger Reynolds ("ALJ") found that the claimant has severe impairments of chronic obstructive pulmonary disease related to continued nicotine abuse and degenerative disc disease of the lumbar spine (Tr. 13). Though he cannot return to his previous work, the ALJ found that plaintiff remains

capable of performing a range of light work, stating:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). He is able to lift/carry/push/pull up to 10 pounds frequently and 20 pounds occasionally. He is able to stand/walk for at least a total of 6 hours per workday. He is able to sit for at least a total of 6 hours per work day. He requires a sit/stand option at one hour intervals. He should not be required to engage in prolonged standing or walking. He is unable to climb ladders, ropes or scaffolds. He is able to occasionally climb stairs or ramps. He is unable to perform aerobic activities such as running, jumping or working on fast-paced assembly lines. He must not be exposed to concentrated levels of dust, gases, smoke, fumes or odors. He must not be exposed to poor ventilation, temperature extremes or excess humidity. (Tr. 14-15)

Plaintiff appeals from this unfavorable decision.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner, 42 U.S.C. §405(g); Elam ex. Rel. Golay, v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary of HHS, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court even thought the record might support a contrary conclusion, Smith v. Secretary of HHS, 893 F.2d

106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts," Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

Plaintiff alleges the following errors: 1) the ALJ erred in failing to give controlling weight to the disabling opinions of the claimant's treating physician, Dr. Jerry Lawson; 2) the ALJ failed to consider the side effects of claimant's medications; 3) the ALJ erred in relying upon opinions from the state agency physicians who did not have the benefit of reviewing all of Dr. Lawson's office notes; 4) the ALJ failed to account for claimant's difficulty ambulating in the RFC findings; and 5) the vocational expert testimony relied upon by the ALJ is insufficient.

## ANALYSIS

The claimant first argues that the ALJ erred in failing to give controlling weight to the opinions of claimant's treating physician, Dr. Jerry Lawson. This argument involves application of what is commonly known as the treating physician rule. The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians. In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court again confirmed the weight ordinarily due the opinion of a treating physician. Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p.

A treating physician's opinion, if uncontradicted, should be given complete deference. See, e.g., Walker v. Secretary of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir.1992). A treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. S 404.1527(d)(2)(1999). In other words, the opinion of a treating physician need not be given *controlling* weight unless supported by clinical or diagnostic findings. See Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir.1997); Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993); Kirk v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). However, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for *controlling* weight. Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

The Pulmonary Residual Functional Capacity Questionnaire completed by treating physician Dr. Lawson limits claimant as follows: lifting/carrying restricted to 20 pounds occasionally; standing for thirty minutes at a time for less than two hours during an eight hour workday; sitting for about two hours in an eight hour workday; walking less than a city block; rare climbing of ladders or stairs; and should avoid exposure to temperature extremes and pulmonary irritants (Tr. 307-311). The form also indicates that claimant will need to rest for 15 minutes every hour, his medications make him jittery, and he would be expected to miss more than four days of work per month. The ALJ discusses Dr. Lawson's report at Tr. 15-16, and explains why he chose to give it some weight, but not controlling weight:

>This assessment is given some, but not controlling, weight. Several of the exertional, postural, and environmental limitations have been incorporated into the final residual functional capacity. A sit-stand option has been incorporated. Limitations with respect to exposure to temperature extremes, excessive humidity, and other pulmonary irritants have been incorporated. Certain postural activities are likely to exacerbate breathing difficulties and back pain; thus, limitations with respect to climbing and aerobic activities have been incorporated. The physician has indicated the claimant is able to lift/carry up to 20 pounds occasionally and 10 pounds frequently; thus, this limitation has been incorporated as well. The sitting limitations described by Dr. Lawson are internally inconsistent. Dr. Lawson's assessment neglects to mention Mr. Quinlin's continued smoking against Dr. Lawson's repeated admonitions to stop. Dr. Lawson asserts the claimant is unable to sit for more than a total of two hours per workday; yet, he also asserts that the claimant is able to sit more than two hours at a time. Moreover, Dr. Lawson indicates the claimant would be expected to miss work more than four days per month. It is noted that Mr. Quinlin continues to smoke even thought he has been repeatedly advised to stop. His overall functioning and condition would likely stabilize or improve to some degree if he stopped smoking. Regardless, the objective medical evidence indicates the claimant is able to sustain light or sedentary work that would accommodate his chronic obstructive pulmonary disease and back pain.

The ALJ's analysis of these records is consistent with application of the treating physician rule. The ALJ explained in detail which of Dr. Lawson's limitations were incorporated into the claimant's RFC, and why other disabling opinions were rejected as internally inconsistent. Of additional import to the analysis is the claimant's continued smoking despite numerous warnings to stop; this fact undermines the claimant's credibility in alleging significant limitations related to his pulmonary condition, Sias v. Secretary of HHS, 861 F.2d 475, 480 (6th Cir. 1988).

Other evidence of record supports the ALJ's rejection of Dr. Lawson's opinions, including chest x-rays that reveal at most moderate chronic obstructive pulmonary disease and emphysema (Tr. 207) and pulmonary function studies which show only mild obstructive pulmonary disease with improvement post BD [bronchodilator] with no evidence of a diffusion defect (Tr. 237). In November of 2006 pulmonary specialist Dr. El-Atfy noted claimant was feeling better since started on Albuterol and mini-nebs, though it was also noted he had not refilled his medications (Tr. 271).

The ALJ notes the claimant's contention that he lacks the money to purchase prescriptions, yet he somehow was able to continue to purchase cigarettes (Tr. 18).

In addressing the claimant's back impairment, the ALJ's opinion included a summary of the evidence indicating multiple disc bulges but no herniation, minimal neurological deficits, no focal motor or sensory deficits and normal gait. Furthermore, the claimant's reliance upon the fibromyalgia case of Rogers v. CSS, 486 F.3d 234 (6th Cir. 2007) is misplaced. In contrast to the errors in Rogers, the ALJ in claimant's case sufficiently identified and articulated substantial bases in the record for rejecting the disabling opinions of Dr. Lawson, and for adopting other medical opinions contained in the record.

Claimant next argues that the ALJ failed to take into consideration the side effect of Albuterol which makes him feel jittery. The ALJ acknowledged the claimant's allegation in his decision, but given the lack of complaints of jitteriness in the medical records, the ALJ was not required to address the allegation. Assuming the claimant's allegations of jitteriness are true, the record nonetheless contains substantial evidence to support the ALJ's determinations. In fact, some of the RFC findings made by the ALJ would address these concerns, including no climbing, no fast paced work, and the sit/stand option. Accordingly, the Court finds no reversible error.

The claimant finds fault with ALJ's reliance upon opinions from the state agency physicians who did not have the benefit of reviewing all of Dr. Lawson's office notes. He argues that it was error for the ALJ to adopt their opinions because they did not perform an examination, and they were not privy to some later-filed office notes from Dr. Lawson. The ALJ specifically mentions this fact in his opinion (Tr. 14), but determines that the subsequent evidence would not alter the state agency physicians' opinions. The Court perceives no error.

With regard to the claimant's ability to ambulate and its effect upon his ability to work, the claimant has failed to identify any physical limitations in excess of those considered by the ALJ in formulating the controlling hypothetical. There is little in the medical evidence that would support claimant's claim of a complete inability to ambulate. The ALJ notes in his opinion that the claimant was not in severe breathing distress at the hearing, that he has demonstrated good use of his upper and lower extremities and is able to walk normally without assistive devices (Tr. 18) In addition, the ALJ's RFC findings included a sit/stand option, limitations on climbing and aerobic activities, and no prolonged standing or walking which would account for some degree of difficulty in ambulation.

Plaintiff contends that the vocational expert's response to the controlling hypothetical was not substantial evidence upon which the ALJ could conclude that there exist significant numbers of jobs which plaintiff court perform. In response to the controlling hypothetical, the vocational expert identified several jobs the claimant remained capable of performing, including both light and sedentary bench assembly, inspecting, and nonhazardous security work (Tr. 45-46). The undersigned has carefully reviewed the vocational expert testimony and finds that the ALJ's RFC findings were supported by substantial evidence and the vocational testimony elicited in accordance with those findings was proper.

## CONCLUSION

After reviewing the record as a whole, the Court concludes that the ALJ's decision is supported by substantial evidence and is entitled to deference. A Judgment in conformity with this Memorandum Opinion has this day entered.